UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

UNITED STATES OF AMERICA

      -v.-

ISHAN WAHI,
NIKHIL WAHI, and
SAMEER RAMANI,

            Defendants.

------------------------------------- X

**SEALED INDICTMENT**

22 Cr.

22 CRIM 392

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

### Overview of the Charges

1.    From at least in or about June of 2021 through in or about April of 2022, ISHAN WAHI, NIKHIL WAHI, and SAMEER RAMANI, the defendants, generated more than a million dollars in illegal trading profits through their participation in a scheme to engage in insider trading in crypto assets that were listed or were under consideration for listing on Coinbase Global, Inc. ("Coinbase"), a major online cryptocurrency exchange platform. As part of the insider trading scheme, ISHAN WAHI violated his duties of trust and confidence to Coinbase by providing confidential business information that he learned in connection with his employment at Coinbase to NIKHIL WAHI and SAMEER RAMANI so that they could secretly engage in profitable trades around

public announcements by Coinbase that it would be listing
certain crypto assets on Coinbase's exchanges.

2.   ISHAN WAHI, the defendant, was a Coinbase employee
involved in the highly confidential process of listing crypto
assets on Coinbase's exchanges.  As a result, ISHAN WAHI had
detailed and advanced knowledge of which crypto assets Coinbase
was planning to list and the timing of public announcements
about those listings.  Because the market value of crypto assets
typically significantly increased after Coinbase announced that
it would be listing a particular asset on its exchanges,
Coinbase kept the information strictly confidential and
prohibited its employees from sharing that information.  In
violation of these policies and his duties of trust and
confidence to Coinbase, ISHAN WAHI misappropriated that
confidential business information to tip his brother, NIKHIL
WAHI, the defendant, and ISHAN WAHI's friend and associate,
SAMEER RAMANI, the defendant, so that they could use that
confidential information to make well-timed purchases of crypto
assets in advance of Coinbase's listing announcements.

3.   After Coinbase's listing decisions became public, and
after the crypto assets appreciated due to that announcement,
NIKHIL WAHI and SAMEER RAMANI, the defendants, caused the sale
of those crypto assets for substantial profits.  In total,

2

during the course of the scheme, NIKHIL WAHI and RAMANI
collectively caused purchases of at least 25 crypto assets in
advance of at least 14 separate Coinbase crypto asset listing
announcements.  As a result of the insider trading scheme,
NIKHIL WAHI and RAMANI collectively generated realized and
unrealized gains totaling at least approximately $1.5 million.

4.    The defendants also took numerous steps to evade
detection from law enforcement.  Throughout their illegal
trading, NIKHIL WAHI and SAMEER RAMANI, the defendants,
attempted to conceal their trading by transferring their crypto
assets through a web of crypto accounts and anonymous Ethereum
blockchain wallets, including through accounts held in others'
names.  In or about May 2022, as the illegal insider trading
scheme came to light, ISHAN WAHI, the defendant, purchased a
one-way airline ticket to a foreign country in an unsuccessful
attempt to flee from the United States.

<u>Background</u>

5.    At all times relevant to this Indictment, Coinbase was
one of the largest cryptocurrency exchanges in the world.
Coinbase allowed users to acquire, exchange, and sell various
crypto assets in online user accounts.  In order to transact in
a particular crypto asset on Coinbase, that crypto asset must be
listed on Coinbase's exchanges.

3

6.     During the time period relevant to this Indictment,
Coinbase frequently announced that particular crypto assets
would be listed on one of its exchanges or were under
consideration for listing.  Coinbase often made these
announcements on Coinbase's publicly available blog or Twitter
account.  It was well known that after Coinbase announced that
it was going to be listing or was considering listing a
particular crypto asset, the market value of that crypto asset
typically rose substantially.

7.     Because Coinbase viewed its reputation as a fair forum
of exchange as essential to its business success, Coinbase took
steps to guard the confidentiality of information regarding
prospective asset listings and to ensure that potential traders
did not learn of prospective listings before the company
announced them formally to the general public. The company's
policies and agreements thus prohibited employees from using
confidential information about asset listings, including which
crypto assets it intended to list on its exchanges, except for
the benefit of Coinbase. Indeed, Coinbase's policies made clear
that employees "helping to implement support of [a] new asset"
were prohibited from "buy[ing] the new asset" in advance of an
announcement.  Coinbase's written policies also prohibited
employees from disclosing the confidential information to any

4

person outside of Coinbase, including "family or friends," and
expressly barred employees from providing a "tip" to any person
who might make a trading decision based on the information.

8.    Beginning in or about October 2020, ISHAN WAHI, the
defendant, was employed by Coinbase as a product manager
assigned to an asset listing team.  Pursuant to the policies
described above, and by virtue of his employment more generally,
ISHAN WAHI was prohibited from sharing confidential business
information about Coinbase's asset listings with others and from
using that information other than for the benefit of his
employer.  Moreover, as a member of Coinbase's asset listing
team, ISHAN WAHI was subject to an "enhanced trading policy"
that, among other things, required him to report his digital
asset holdings and seek preclearance for any digital asset
trades conducted by ISHAN WAHI outside of Coinbase's platform.
During the course of his employment at Coinbase, ISHAN WAHI
provided Coinbase with a written certification that he had read
the company's trading and confidentiality policies, that he
understood them, and that he would comply with them.

9.    As a product manager on one of Coinbase's asset
listing teams, ISHAN WAHI, the defendant, frequently had
advanced knowledge of which crypto assets Coinbase planned to
announce it was listing or considering listing, and had advanced

5

knowledge of the timing of those announcements.  Indeed,
beginning at least in or about August 2021 and continuing until
at least in or about May 2022, ISHAN WAHI was a member of a
private messaging channel reserved for a small number of
Coinbase employees with direct involvement in the Coinbase asset
listing process.  Upon joining the channel, ISHAN WAHI was
informed by another Coinbase employee that its purpose was to
provide a "safe place to discuss details around asset launches"
such as "exact announcement / launch dates + timelines" that the
company did not wish to share with all of its employees.

10.  ISHAN WAHI, the defendant, knew that the asset listing
information discussed within the messaging channel was highly
confidential or "need to know" and not to be shared outside what
ISHAN WAHI himself referred to as the "tighter circle" of
Coinbase employees involved in the asset listing.  ISHAN WAHI
also knew that due to the highly confidential nature of asset
listing information, he and other Coinbase employees with access
to the information were prohibited from trading in assets under
consideration for listing on Coinbase and tipping others so that
they could trade on that information, no matter the forum in
which the trading took place.

11.  In connection with the scheme, ISHAN WAHI, the
defendant, sought to deceive Coinbase and his fellow employees

by assuring them – through, among other means, Coinbase's
private asset listing messaging channel (including interstate
wire communications sent from ISHAN WAHI to a fellow Coinbase
employee located in Manhattan, New York) – that he was
maintaining the confidentiality of this information.  In truth
and in fact, however, ISHAN WAHI repeatedly breached his duty of
confidentiality to Coinbase by misappropriating Coinbase's
confidential information and providing it to his brother, NIKHIL
WAHI, the defendant, and ISHAN WAHI's friend and associate,
SAMEER RAMANI, the defendant, so that they could make profitable
trades on the basis of that confidential information.

The Insider Trading Scheme

12.  On numerous occasions beginning at least in or about
June 2021 and continuing through in or about April 2022, ISHAN
WAHI, the defendant, knew in advance both that Coinbase planned
to list particular crypto assets and when Coinbase intended to
make its public announcements of those asset listings, and
misappropriated this Coinbase confidential information by
providing it to either NIKHIL WAHI or SAMEER RAMANI, the
defendants, so that they could place profitable trades in
advance of Coinbase's public listing announcements.  Upon
learning Coinbase's confidential listing plans, NIKHIL WAHI and
SAMEER RAMANI used anonymous Ethereum blockchain wallets to

acquire certain crypto assets shortly before Coinbase publicly announced that it was listing or considering listing those same assets on its exchanges.

13.  Based on confidential information provided by ISHAN WAHI, the defendant, NIKHIL WAHI and SAMEER RAMANI, the defendants, collectively traded shortly in advance of at least 14 separate Coinbase public listing announcements concerning at least 25 different crypto assets, and then, in most instances, subsequently sold the crypto assets they had acquired for a profit.  These trades collectively led to realized and unrealized gains totaling at least approximately $1.5 million. For example:

### *Insider Trading in TRIBE*

a.  In or about August 2021, as a result of his employment at Coinbase, ISHAN WAHI learned of Coinbase's intention to publicly announce that it was listing the crypto asset TRIBE on its exchanges.  Because ISHAN WAHI was among a small group of Coinbase employees privy to Coinbase's confidential listing plans, he had access to detailed and specific information regarding when Coinbase's public announcement that it was listing TRIBE would occur.  In breach of his duty of confidentiality to Coinbase, ISHAN WAHI tipped his brother, NIKHIL WAHI, about Coinbase's plan to list TRIBE.

b.   With advance knowledge of Coinbase's listing
plans, on or about August 10, 2021, NIKHIL WAHI caused an
anonymous Ethereum blockchain wallet – which has since been
linked to NIKHIL WAHI through internet protocol ("IP") address
records and blockchain analysis - to purchase approximately
$60,000 worth of TRIBE tokens.  NIKHIL WAHI caused these
purchases to be made in an anonymous Ethereum blockchain wallet
mere minutes before Coinbase publicly announced that it would be
listing TRIBE on its exchanges on August 10, 2021.  Following
that announcement, the value of TRIBE increased substantially.
The following day, NIKHIL WAHI, through multiple transactions,
exchanged all of the TRIBE tokens for crypto stablecoins (each
equivalent in value to 1 United States dollar) worth
approximately $67,000, resulting in a profit of approximately
$7,000.

### *Insider Trading in XYO*

c.   In or about August 2021, as a result of his
employment at Coinbase, ISHAN WAHI learned of Coinbase's
intention to publicly announce that it was listing the crypto
asset XYO on its exchanges.  Because ISHAN WAHI was among a
small group of Coinbase employees privy to Coinbase's
confidential listing plans, he had access to detailed and
specific information regarding when Coinbase's public

announcement that it was listing XYO would occur.  In breach of his duty of confidentiality to Coinbase, ISHAN WAHI tipped his friend and associate, RAMANI, about Coinbase's plan to list XYO.

d.   With advance knowledge of Coinbase's listing plans, between on or about August 31, 2021 and on or about September 8, 2021, RAMANI caused a network of approximately 15 separate anonymous Ethereum blockchain wallets – which have since been linked to RAMANI through either IP address records or blockchain analysis – to purchase approximately $610,000 worth of XYO tokens.  Following the September 8, 2021 Coinbase listing announcement, the value of XYO increased substantially.  SAMEER RAMANI then caused the XYO tokens that he had acquired to be transferred to accounts held at a centralized exchange subject to his control. At the time of those transfers the assets had risen in value to being worth approximately $1.5 million, and RAMANI had reaped gains of nearly $900,000.

*Insider Trading in ALCX, GALA, ENS, and POWR*

e.   In or around November 2021, as a result of his employment at Coinbase, ISHAN WAHI learned of Coinbase's intention to publicly announce that it was listing the crypto assets ALCX, GALA, ENS, and POWR on its exchanges.  Because ISHAN WAHI was among a small group of Coinbase employees privy to Coinbase's confidential listing plans, he had access to

detailed and specific information regarding when Coinbase's

public announcement that it was listing ALCX, GALA, ENS, and

POWR would occur.   In breach of his duty of confidentiality to

Coinbase, ISHAN WAHI tipped his brother, NIKHIL WAHI, about

Coinbase's plan to list ALCX, GALA, ENS, and POWR.

      f.   With advance knowledge of Coinbase's listing

plans, on or about November 15, 2021, NIKHIL WAHI caused

anonymous Ethereum blockchain wallets – which have since been

linked to NIKHIL WAHI through IP address records and blockchain

analysis – to purchase approximately $134,000 worth of ALCX,

GALA, ENS, and POWR tokens.   NIKHIL WAHI caused certain of these

purchases to be made in an anonymous Ethereum blockchain wallet

mere minutes before Coinbase publicly announced that it would be

listing ALCX, GALA, ENS, and POWR on its exchanges on November

15, 2021.   Following that November 15, 2021 announcement, the

value of certain of the tokens that NIKHIL WAHI had acquired

increased substantially.   NIKHIL WAHI then exchanged certain of

the crypto tokens that he had acquired for stablecoins and

transferred the remainder of the tokens and the stablecoin

proceeds to accounts subject to his control.   NIKHIL WAHI's

trading collectively resulted in profits of approximately

$13,000.

*Insider Trading Ahead of the April 2022 Announcement*

g.   In or around April 2022, as a result of his employment at Coinbase, ISHAN WAHI learned of Coinbase's intention to publicly announce that it was considering potentially listing dozens of crypto assets on its exchanges. Because ISHAN WAHI was among a small group of Coinbase employees privy to Coinbase's confidential listing plans, he had access to detailed and specific information regarding when Coinbase's public announcement that it was considering listing these various crypto tokens would occur.   In breach of his duty of confidentiality to Coinbase, ISHAN WAHI tipped his friend and associate, RAMANI, about Coinbase's plan to announce that certain crypto assets were under consideration for listing on Coinbase's exchanges.

h.   With advanced knowledge of Coinbase's listing plans, RAMANI caused multiple anonymous Ethereum blockchain wallets – which have since been linked to RAMANI through IP address records and blockchain analysis – to purchase large quantities of at least six of the crypto assets that were to be included in Coinbase's April 11, 2022 listing announcement. RAMANI spent at least approximately $370,000 to acquire these crypto assets in advance of the April 11, 2022 announcement. Following Coinbase's April 11, 2022 public announcement

regarding the crypto assets that were under consideration for listing, the crypto assets purchased by RAMANI quickly thereafter appreciated by over at least over $195,000.

14.  To conceal their purchases of crypto assets in advance of Coinbase's listing announcements, NIKHIL WAHI and SAMEER RAMANI, the defendants, used accounts at centralized exchanges held in the names of others, and transferred funds, crypto assets, and proceeds of their scheme through multiple anonymous Ethereum blockchain wallets.  NIKHIL WAHI and RAMANI also regularly created and used new Ethereum blockchain wallets without any prior transaction history in order to further conceal their involvement in the scheme.

### ISHAN WAHI's Attempt to Flee the United States

15.  Shortly after SAMEER RAMANI, the defendant, traded in advance of Coinbase's listing announcement on April 11, 2022, on or about April 12, 2022, a Twitter account that is well known in the crypto community, with hundreds of thousands of followers, tweeted that it had identified an Ethereum blockchain wallet "that bought hundreds of thousands of dollars of tokens exclusively featured in the Coinbase Asset Listing post about 24 hours before it was published." The trading activity referenced in the April 12, 2022 tweet was the trading caused by RAMANI on or about April 11, 2022.  On April 13, 2022, Coinbase's Chief

Security Officer publicly replied on Twitter to the April 12, 2022 tweet, and stated that Coinbase had already begun investigating the matter.

16.  On or about April 28, 2022, Coinbase's Chief Executive Officer posted on the company's publicly accessible blog that the company was investigating whether "someone inside Coinbase" leaked the company's confidential information "to outsiders engaging in illegal activity," and that any Coinbase employee who engaged in such activity would be "immediately terminated and referred to relevant authorities (potentially for criminal prosecution)."

17.  Less than two weeks later, on May 11, 2022, and in connection with Coinbase's investigation of leaked confidential information, the company's director of security operations emailed ISHAN WAHI, the defendant, to inform him that he should appear for an in-person meeting relating to Coinbase's asset listing process at Coinbase's Seattle, Washington office on May 16, 2022.  ISHAN WAHI confirmed he would attend the meeting.

18.  After learning that he was going to be interviewed as part of Coinbase's investigation, ISHAN WAHI, the defendant, attempted leave the United States and flee to India. Specifically, on the evening of Sunday, May 15, 2022, the night before his meeting with Coinbase was scheduled to occur, ISHAN

14

WAHI purchased a one-way ticket for a flight to New Delhi, India that was scheduled to depart approximately 11 hours later, shortly before he was supposed to be interviewed by Coinbase. Prior to boarding the flight, ISHAN WAHI falsely told Coinbase employees with whom he worked that he already had departed for India, when in truth and in fact he had not, claiming that he was "out indefinitely" and that his departure was due to a medical emergency involving his father.  Approximately thirty-five minutes before his scheduled departure time, ISHAN WAHI wrote to Coinbase's director of security operations that he "had to fly back home" but that the meeting could be rescheduled to occur later in the week or early the next week.

19.  In the hours between booking the one-way flight to India and his scheduled departure time on May 16, 2022, ISHAN WAHI, the defendant, called and texted NIKHIL WAHI and SAMEER RAMANI, the defendants, about Coinbase's investigation, and sent both of them a photograph of the messages he had received on May 11, 2022 from Coinbase's director of security operations.

20.  Prior to boarding his May 16, 2022, flight to India, ISHAN WAHI, the defendant, was stopped by law enforcement agents and prevented from leaving the country.  Despite his claims to Coinbase's director of security operations that he could reschedule his meeting for later that week or early the next

week, ISHAN WAHI was traveling on a one-way ticket to India with an extensive array of belongings, including, among other items, three large suitcases, seven electronic devices, two passports, multiple other forms of identification, hundreds of dollars in U.S. currency, financial documents, and other personal effects and items.

<u>Statutory Allegations</u>

21.  From at least in or about July 2021, up to and including in or about May 2022, in the Southern District of New York, and elsewhere, ISHAN WAHI and NIKHIL WAHI, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Sections 1343.

22.  It was a part and object of the conspiracy that ISHAN WAHI and NIKHIL WAHI, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme

16

and artifice, in violation of Title 18, United States Code,

Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

23.   The allegations contained in paragraphs 1 through 20

of this Indictment are hereby repeated, re-alleged, and

incorporated by reference as if fully set forth herein.

24.   From at least in or about June 2021, up to and

including in or about May 2022, in the Southern District of New

York, and elsewhere, ISHAN WAHI and SAMEER RAMANI, the

defendants, and others known and unknown, willfully and

knowingly, did combine, conspire, confederate, and agree

together and with each other to commit wire fraud, in violation

of Title 18, United States Code, Sections 1343.

25.   It was a part and object of the conspiracy that ISHAN

WAHI and SAMEER RAMANI, the defendants, and others known and

unknown, knowingly having devised and intending to devise a

scheme and artifice to defraud and for obtaining money and

property by means of false and fraudulent pretenses,

representations, and promises, would and did transmit and cause

to be transmitted by means of wire and radio communication in

interstate and foreign commerce, writings, signs, signals,

17

pictures, and sounds for the purpose of executing such scheme
and artifice, in violation of Title 18, United States Code,
Section 1343.

(Title 18, United States Code, Section 1349.)

### COUNT THREE
### (Wire Fraud)

The Grand Jury further charges:

26.  The allegations contained in paragraphs 1 through 20
of this Indictment are hereby repeated, re-alleged, and
incorporated by reference as if fully set forth herein.

27.  From at least in or about July 2021 up to and
including at least in or about May 2022, in the Southern
District of New York and elsewhere, ISHAN WAHI and NIKHIL WAHI,
the defendants, knowingly having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, transmitted and caused to be
transmitted by means of wire and radio communication in
interstate and foreign commerce, writings, signs, signals,
pictures, and sounds, for the purpose of executing such scheme
and artifice, to wit, ISHAN WAHI and NIKHIL WAHI participated in
a scheme to deprive Coinbase of its exclusive use of
confidential business information related to Coinbase's plans to
list certain crypto assets on its exchanges by converting that

18

information to their own use and relying on it to engage in
profitable trades in crypto assets, in breach of ISHAN WAHI's
duties of trust and confidence to Coinbase.

(Title 18, United States Code, Section 1343 and 2.)

## COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

28.   The allegations contained in paragraphs 1 through 20
of this Indictment are hereby repeated, re-alleged, and
incorporated by reference as if fully set forth herein.

29.   From at least in or about June 2021 up to and
including at least in or about May 2022, in the Southern
District of New York and elsewhere, ISHAN WAHI and SAMEER
RAMANI, the defendants, knowingly having devised and intending
to devise a scheme and artifice to defraud, and for obtaining
money and property by means of false and fraudulent pretenses,
representations, and promises, transmitted and caused to be
transmitted by means of wire and radio communication in
interstate and foreign commerce, writings, signs, signals,
pictures, and sounds, for the purpose of executing such scheme
and artifice, to wit, ISHAN WAHI and SAMEER RAMANI participated
in a scheme to deprive Coinbase of its exclusive use of
confidential business information related to Coinbase's plans to
list certain crypto assets on its exchanges by converting that

19

information to their own use and relying on it to engage in profitable trades in crypto assets, in breach of ISHAN WAHI's duties of trust and confidence to Coinbase.

(Title 18, United States Code, Section 1343 and 2.)

## FORFEITURE ALLEGATION

30.   As a result of committing one or more of the offenses alleged in Counts One through Four of this Indictment, ISHAN WAHI, NIKHIL WAHI, and SAMEER RAMANI, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

Substitute Assets Provision

31.   If any of the above-described forfeitable property, as a result of any act or omission of ISHAN WAHI, NIKHIL WAHI, and SAMEER RAMANI, the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

20

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be

   subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), and Title 28, United States

Code, Section 2461, to seek forfeiture of any other property of

the defendants up to the value of the above forfeitable

property.

              (Title 18, United States Code, Sections 981;
             Title 21, United States Code, Section 853; and
              Title 28, United States Code, Section 2461.)


_____              _____
FOREPERSON                             DAMIAN WILLIAMS
                                       United States Attorney

21

Form No. USA-33s-274 (Ed. 9-25-58)

---

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

---

### UNITED STATES OF AMERICA

v.

### ISHAN WAHI,
### NIKHIL WAHI, and
### SAMEER RAMANI

Defendants.

---

### SEALED INDICTMENT

22 Cr. ___

(18 U.S.C. §§ 1343, 1349, & 2)

DAMIAN WILLIAMS
United States Attorney.

**A TRUE BILL**

Foreperson.

---

True Bill + Sealed Indictment
filed 7/19/22 before OTW

KC